STATE OF NORTH CAROLINA v. PAMELA J. CATOE

No. 8518SC383

(Filed 3 December 1985)

**Automobiles and Other Vehicles § 126.3— blood alcohol concentration—.09 two and a half hours after accident—expert testimony that level at time of accident .13—no error**

    The trial court did not err in a prosecution for manslaughter, DWI, and driving on the wrong side of an interstate highway by allowing an expert witness to testify that the average person displayed a certain rate of decline in blood alcohol concentration in the hours after the last consumption of alcohol and that defendant's BAC would have been approximately .13 at the time of the accident based on his BAC of .09 two and a half hours after the accident. The witness testified that he had done experiments to determine the average rate of elimination of alcohol from the blood, that he had arrived at a mean elimination rate which matched that observed by other nationally and internationally known scientists in the field, that his data were very consistent across the various subcategories of the population although there could be deviations from the mean in individual cases, and that the body eliminated alcohol essentially on a straight line basis, which established the general validity of his simple mathematical extrapolation. Moreover, there was evidence sufficient to go to the jury on the question of DWI regardless of the expert testimony because the officer smelled a moderate odor of alcohol on defendant's person at the accident scene and observed slurred speech and glassy eyes. N.C.G.S. 8C-1, Rules of Evidence 103(a), 702.

APPEAL by defendant from *Albright,. Judge.* Judgment entered 7 December 1984 in Superior Court, GUILFORD County. Heard in the Court of Appeals 18 October 1985.

Upon proper indictment defendant was tried for manslaughter, driving while impaired (DWI), and driving on the wrong side of an interstate highway. The charges arose out of an early morning accident in which defendant's car suddenly swerved across the highway median and ran head on into another car.

The State's evidence tended to show that defendant was removed from her car by emergency personnel. At the time a patrolman noticed that she had a moderate odor of alcohol about her, and that her eyes were glassed over and red and her speech slurred. She was taken to a hospital, where a blood sample was taken some 2½ hours later. The sample yielded a blood alcohol concentration (BAC) of .09. An expert witness, Dr. Ellis, testified for the State and estimated by extrapolation that defendant's BAC at the time of the accident would have been approximately 0.13.

Defendant testified that she had had three glasses of wine the night before, the last one seven hours before the accident. She did not drink anything in the morning. The accident occurred when she bent to pick something up off the floor of her car and lost control.

The jury found defendant guilty of DWI and driving on the wrong side. She received a single twelve month active sentence, work release recommended, on unsecured appearance bond pending this appeal.

*Attorney General Thornburg, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*Assistant Public Defender Frederick G. Lind for defendant-appellant.*

EAGLES, Judge.

The only assignment on appeal is whether the court erred in allowing the expert witness, Dr. Ellis, to testify that the average person displays a certain rate of decline in BAC in the hours after the last consumption of alcohol, and that based on that average rate of decline defendant's BAC would have been approximately 0.13 at the time of the accident. We find no error.

I

Defendant's objections to the contested testimony were only general. Error may not be argued on appeal where the underlying objection fails to present the nature of the alleged error to the trial court. This rule serves to facilitate proper rulings and to enable opposing counsel to take proper corrective measures to avoid retrial. G.S. 8C-1, R. Ev. 103(a); 1 H. Brandis, N.C. Evidence Section 27 at 107 (1982). The assignment is not properly before this Court.

II

Even assuming that the question is properly before us, we conclude that this evidence was properly admitted. A qualified expert (Dr. Ellis' qualifications are not contested) may give opinion testimony on scientific matters if it will assist the trier of fact to understand the evidence or determine a fact in issue. G.S. 8C-1, R. Ev. 702. The decision as to whether scientific opinion evidence is

sufficiently reliable and relevant remains largely with the discretion of the trial judge. *State v. Bullard*, 312 N.C. 129, 322 S.E. 2d 370 (1984).

Of particular importance here, and strongly emphasized by defendant, is the requirement that the scientific technique on which the expert bases the proffered opinion be recognized as reliable. *See id.* at 144-54, 322 S.E. 2d at 379-84. We note, however, that *absolute certainty* of result is not required. *See United States v. Baller*, 519 F. 2d 463 (4th Cir.), *cert. denied*, 423 U.S. 1019, 46 L.Ed. 2d 391, 96 S.Ct. 456 (1975). The technique must have achieved general acceptance in the relevant scientific community and provide scientific assurance of accuracy and reliability. *Bullard; United States v. Alexander*, 526 F. 2d 161 (8th Cir. 1975) (reliability one of most important factors).

Defendant's failure to object specifically at trial on this ground, now asserted as error, hinders our consideration since a full record was not developed. The record does show that Dr. Ellis testified that he had done experiments to determine the average rate of elimination of alcohol from the blood. He arrived at a mean elimination rate, which matched that observed by many other nationally and internationally known scientists in his field. Dr. Ellis admitted that there could be deviation from the mean in individual cases, but that his data were very consistent across the various subcategories of the population. He testified that the body eliminated alcohol essentially on a straight line basis, establishing the general validity of his simple mathematical extrapolation. On this record, we conclude that Dr. Ellis' testimony was sufficiently reliable and the court did not abuse its discretion in admitting it. The possibility of minor variations conceded by Dr. Ellis (which, if applied in defendant's favor, would still result in a BAC of .12), went to the weight, not the admissibility of his testimony.

### III

We find only one other North Carolina case discussing the admissibility of extrapolation evidence and that was in *dicta*. *State v. Cooke*, 270 N.C. 644, 155 S.E. 2d 165 (1967). However, recent decisions of other states generally have recognized extrapolation as reliable. *See Bartel v. State*, 704 P. 2d 1067 (Mont. 1985) (range of BAC values based on blood samples drawn 2½

hours after accident admissible); *Ring v. Taylor*, 141 Ariz. 56, 685 P. 2d 121 (Ct. App. 1984) (retroactive extrapolation has achieved general acceptance); *State v. Armstrong*, 236 Kan. 290, 689 P. 2d 897 (1984) (delay of two hours in sampling for jury to consider; "lapse of time usually favors a defendant"). Of course, usual constraints of relevance continue to apply. *See People v. Leonora*, 133 Ill. App. 3d 74, 477 N.E. 2d 1277 (1985) (accident after drinking; State could not introduce extrapolation testimony when only test taken was six hours later, showing BAC of zero). We note that one court has suggested that legislative enactments establishing a certain BAC as presumptive of impairment or sufficient to establish the offense are simply a legislative recognition of the validity of extrapolation and its value in eliminating the need for expert testimony in every DWI case. *Erickson v. Municipality of Anchorage*, 662 P. 2d 963 (Alaska Ct. App. 1983).

### IV

Although the primary value of Dr. Ellis' testimony was to establish that defendant's BAC was above the statutory .10 at the time of the accident, the State was not required to establish that BAC level to prove DWI. *State v. Sigmon*, 74 N.C. App. 479, 328 S.E. 2d 843 (1985) (defendant's BAC of .06 did not establish presumption that not impaired; other evidence, principally opinion of patrolman, sufficed to convict); *see State v. Shuping*, 312 N.C. 421, 323 S.E. 2d 350 (1984) (proof of .10 simply one of two methods of proving DWI). Here there was evidence that defendant had a BAC of .09 after the accident, and no evidence of drinking between the time of the accident and the sample. The officer smelled a moderate odor of alcohol on defendant's person at the accident scene, and observed slurred speech and glassy eyes. He gave his opinion that "she had consumed some controlled substance to an appreciable degree that would have affected both her mental and physical faculties." This evidence sufficed to go to the jury on the question of DWI regardless of Dr. Ellis' testimony. *Sigmon; see State v. Felts*, 5 N.C. App. 499, 168 S.E. 2d 483 (1969) (effect of alcohol must be recognizable) (new trial on unrelated grounds).

### CONCLUSION

Accordingly, we conclude that defendant has failed to show prejudicial error. No other error appears on the face of the record.

No error.

Judges WHICHARD and COZORT concur.