IN THE MATTER OF: JAMES CHRISTOPHER WHEELER, AND JOHN ROBERT
WHEELER, MINOR CHILDREN

No. 8715DC179

(Filed 6 October 1987)

1. **Parent and Child § 1.6— order adjudging child abuse—res judicata in termina-
tion proceeding**
     Although an order adjudging that respondent father had sexually abused
his children failed to state affirmatively that the allegations of abuse had been
proven by clear and convincing evidence as required by N.C.G.S. § 7A-635 and
-637, the trial court properly ruled that the prior order was *res judicata* and
estopped the parties in a proceeding to terminate respondent's parental rights
from relitigating the abuse issue decided in the previous proceeding where no
appeal was taken or other relief sought from the prior order.

2. **Parent and Child § 1.6— termination of parental rights—competency of moth-
er's testimony**
     In a proceeding to terminate parental rights, opinion testimony by the
children's mother concerning where the children should live and whether it
would be best for them to be adopted was properly admitted for the limited
purpose of evaluating the mother's attitude, understanding of the situation,
fitness as a parent, and prospects of regaining custody and did not prejudice
respondent father.

3. **Parent and Child § 1.6— termination of parental rights—opinion of guardian ad
litem—absence of prejudice**
     The erroneous admission of the lay opinion of a guardian ad litem that it
was in the best interests of the children for parental rights to be terminated
was not prejudicial in view of the abundance of other evidence supporting the
trial judge's decision and the remarks of the judge indicating that he did not
rely on this testimony.

4. **Parent and Child § 1.6— termination of parental rights—child's statements
during therapy—proper basis for opinion testimony**
     In a proceeding to terminate parental rights, testimony by the director of
a children's home as to statements made to him by one child during therapy
concerning sexual abuse by the child's father was properly admitted as a basis
for the director's opinions concerning the continued effects of the sexual abuse

on the child and how the child's psychological and behavioral problems related to prospects for adoption.

**5. Parent and Child § 1.6— termination of parental rights—social worker's opinion on adoption possibilities**

> The trial court in a proceeding to terminate parental rights impliedly found that a social worker was qualified to render an expert opinion on the position of the two children as candidates for adoption, and the witness was entitled under N.C.G.S. § 8C-1, Rule 703, to rely upon information received from a children's home as a basis for her expert opinion.

**6. Parent and Child § 1.6— termination of parental rights—state of mind of respondent's mother—opinion testimony inadmissible**

> The trial court in a proceeding to terminate parental rights erred in allowing the guardian ad litem to testify that respondent father's mother was "torn between loyalty to the boys and loyalty to her son" as a part of the basis for her opinion that it was in the best interests of the children to terminate parental rights since the witness was not qualified as an expert and her personal knowledge of respondent's mother was based on minimal telephone contact. However, evidence of the state of mind of respondent's mother was only minimally relevant to the issues before the court, and respondent was not prejudiced by such evidence.

APPEAL by Respondent, John Gladstone Wheeler, from *Washburn, Judge.* Order entered 25 August 1986 in District Court, ALAMANCE County. Heard in the Court of Appeals 26 August 1987.

*Lynn A. Andrews and S. C. Kitchen, for petitioner appellee, Alamance County Department of Social Services.*

*Jacobs and Livesay, by Robert J. Jacobs, for respondent appellant, John Gladstone Wheeler.*

*Messick, Messick, and Messick, by Steven H. Messick, for Eleanor Ketchum, guardian ad litem for the minor children, appellees.*

BECTON, Judge.

Respondent, John Gladstone Wheeler, appeals from an order of the Alamance County District Court terminating his parental rights to his two sons, James Christopher "Jamie" Wheeler, and John Robert "Robbie" Wheeler, on the grounds of abuse. The mother of the children, Debra Crawford Wheeler Trejo, whose parental rights also were terminated on grounds of abandonment

and failure to provide support, did not contest the termination of her rights and does not appeal. We affirm the decision of the trial court.

I

John G. Wheeler and Debra C. Wheeler Trejo separated in 1982 and were divorced in September 1983. Following their parents' separation, Jamie and Robbie Wheeler lived with their father in the home of Respondent's mother, Hazel Crawford, and Respondent acquired legal custody of the children.

Jamie and Robbie were initially removed from the custody of Respondent and placed in the temporary custody of the Alamance County Department of Social Services (Petitioner) under a nonsecure custody order entered by District Court Judge J. Kent Washburn on 20 March 1985, when they were ages 11 and 9 respectively. The order was granted pursuant to a juvenile petition filed 20 March 1985 by Petitioner, alleging that the children were abused and neglected within the meaning of N.C. Gen. Stat. Sec. 7A-517(1) and (21). Following a 29 April 1985 hearing before District Court Judge J. B. Allen, Jr., the children were adjudicated to be abused and neglected and were ordered placed in the legal care, custody and control of Petitioner. The court found as a fact that Respondent had, for several years, performed sexual acts, including oral and anal intercourse, with the children, the most recent of which had occurred 19 March 1985.

On 15 April 1985, Respondent was indicted on several criminal charges, including incest, and on 4 June 1985, he pled guilty, pursuant to a plea agreement, to two counts of felonious incest with his children and one count of indecent liberties with another minor child. For these offenses, he was sentenced to three consecutive ten-year active prison terms.

Efforts were made by Petitioner, after acquiring custody, to assist and prepare the children's mother to provide a home for the boys, but those efforts were unsuccessful. On 17 March 1986 Petitioner filed a petition to terminate the parental rights of both parents, attaching and incorporating in its petition a copy of the 29 April 1985 adjudication of abuse and neglect. Respondent filed an answer, and motions to dismiss and to strike all references to

the incorporated order, challenging Petitioner's authority to file the petition and denying all material allegations in the petition.

A preliminary hearing to determine the issues raised by the petition and response was held 7 July 1986, following which Judge Allen entered an order concluding that Petitioner was authorized, pursuant to N.C. Gen. Stat. Sec. 7A-289.24(3), to petition for termination of parental rights, and that the parties were estopped from relitigating the prior abuse and neglect adjudications by virtue of the doctrine of *res judicata* or collateral estoppel. The court limited the issues for the termination hearing to circumstances existing at the time of the hearing and the best interests of the children.

Hearing on the petition to terminate parental rights was held on 28 July, 4 August, and 25 August 1986 before Judge J. Kent Washburn. Witnesses for the Petitioner included Bill Painter, Director of Grandfather Home for Children in Linville, North Carolina; Nancy Dunham, Social Worker II with Alamance County Department of Social Services; Debra Trejo, mother of the minor children; Dr. Mark Everson, the pediatric psychologist who initially evaluated the children for possible sexual abuse; and the children, Jamie and Robbie Wheeler. The sole witness for Respondent was his mother, Hazel Crawford, who testified that she would like for the children to live with her. Eleanor Ketchum, the court appointed guardian ad litem, testified on behalf of the children that it was in their best interests for parental rights to be terminated.

The court made findings of fact and concluded that grounds for termination of Respondent's rights existed pursuant to N.C. Gen. Stat. Sec. 7A-289.32(2) and that it was in the best interests of the children that his rights be terminated. The findings showed, in part, that since the removal of the children from Respondent's custody, Jamie has been placed with relatives, in two foster homes, and, finally, in the adoption preparation program at Grandfather Home for Children in Linville, North Carolina. Robbie has remained in foster care following a short placement with relatives. Both children have been receiving therapy for significant emotional and behavioral problems.

The Court also found that Respondent will not be eligible for parole before the children reach majority, and that "there is no

reasonable hope that the family within a reasonable period of time will be able to provide for the emotional or physical welfare of these minor children."

## II

Respondent brings forward and argues separately on appeal thirty-nine assignments of error. Although we have carefully considered each of them, we limit our discussion to the most significant arguments.

## A

[1] Respondent's first and primary contention is that the trial court erred by denying his motion to dismiss and by ruling that the adjudication and dispositional order of 29 April 1985 had a binding *res judicata* or collateral estoppel effect in the termination proceeding. Specifically, he maintains that, because the order adjudging his children abused and neglected failed to state affirmatively that the allegations of abuse and neglect in the juvenile petition had been proven "by clear and convincing evidence" as required by N.C. Gen. Stat. Secs. 7A-635 and -637, the order was invalid and could neither serve as Petitioner's G.S. 7A-289.24(3) authority to file the petition nor bind the Court in the termination proceeding on the issue of abuse.

This Court has held, based upon the mandate of N.C. Gen. Stat. Secs. 7A-635 and -637, that a trial court's failure to state the standard of proof used in making a determination of delinquency constitutes reversible error on appeal. *See In re Walker*, 83 N.C. App. 46, 348 S.E. 2d 823 (1986); *In re Johnson*, 76 N.C. App. 159, 331 S.E. 2d 756 (1985); *In re Wade*, 67 N.C. App. 708, 313 S.E. 2d 862 (1984). Because the same statutes require trial judges to recite the standard of proof applied in a juvenile abuse or neglect proceeding, we agree with Respondent that the Court's failure to do so in this case was error.

However, the proper avenues for Respondent to attack the adjudication of neglect and abuse and the dispositional order granting custody to Petitioner were 1) appeal, pursuant to N.C. Gen. Stat. Sec. 7A-666, or 2) a motion for relief pursuant to N.C. Gen. Stat. Sec. 1A-1, Rule 60. Although collateral attack in an independent or subsequent action is a permissible means of seeking relief from a judgment or order which is void on its face for lack

of jurisdiction, *see Stroupe v. Stroupe*, 301 N.C. 656, 273 S.E. 2d 434 (1981); *Hassel v. Wilson*, 301 N.C. 307, 272 S.E. 2d 77 (1981), the error in this case was not a jurisdictional error subject to that kind of challenge. Because no appeal was taken or other relief sought from the 29 April 1985 order, it remained a valid final order which was binding in the later proceeding on the facts regarding abuse and neglect which were found to exist at the time it was entered.

The doctrine of collateral estoppel operates to preclude parties "from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E. 2d 799, 805 (1973). In this case, the issue of Respondent's sexual abuse of his children had been fully litigated and was necessary to the adjudication of abuse. Moreover, "[t]o be valid, a judgment need not be free from error. Normally, no matter how erroneous a final valid judgment may be on either the facts or the law, it has binding *res judicata* and collateral estoppel effect in all courts, Federal and State, on the parties and their privies." *King v. Grindstaff* at 360, 200 S.E. 2d at 808.

In *In re Wilkerson*, 57 N.C. App. 63, 291 S.E. 2d 182 (1982), this Court held that the trial court had properly applied the doctrine of collateral estoppel in ruling that findings included in a prior adjudication of neglect were binding on the Court in a later hearing on a petition to terminate parental rights. And although our Supreme Court has not specifically resolved this collateral estoppel issue, it concluded in *In re Ballard*, 311 N.C. 708, 319 S.E. 2d 227 (1984) that a prior adjudication of neglect may be admitted and considered by the trial court in a subsequent proceeding to terminate parental rights on the grounds of neglect, and that the treatment of such an order as binding in the termination proceeding will not prejudice the parents if the hearing is properly conducted.

In the present case, the trial court did not rely solely upon the previous order in a way that would impermissibly predetermine the outcome of the termination hearing. Rather, the judge admitted and considered other evidence concerning the family's circumstances and the psychological condition and well-being of the children which was relevant to a determination of "the best

interests of the child[ren] and the fitness of the parent to care for the child[ren] *at the time of the termination proceeding." Ballard* at 715, 319 S.E. 2d at 232 (emphasis in original). Furthermore, the judge did not deny Respondent the opportunity to present any evidence relevant to these issues; he merely prohibited the parties from relitigating whether Respondent had, in fact, sexually abused the children.

Based on the foregoing, we conclude that the trial court did not err by concluding that Petitioner was authorized to file the petition to terminate parental rights and, thus, denying Respondent's motion to dismiss, nor by ruling that the parties were estopped from relitigating the abuse and neglect issues decided in the previous proceeding.

B.

Respondent's next thirteen assignments of error relate to evidentiary rulings of the trial court.

1. Respondent first argues generally that the trial court erred by allowing several witnesses for Petitioner to testify regarding the sexual abuse of the children while restricting Respondent's own scope of inquiry into that issue, the overall effect of which was highly prejudicial to Respondent. We disagree. As we discussed in the preceding section, the court did not err by prohibiting Respondent from relitigating the fact of the abuse. Moreover, having reviewed the transcript, we find that the various pieces of testimony to which Respondent objects were not admitted for the purpose of proving the abuse occurred, but were plainly and carefully limited by the Court to other permissible purposes. This assignment of error is without merit.

2. Four of Respondent's arguments challenge the admission of opinion testimony given by the following four witnesses concerning the best interests of the children with regard to the desirability of terminating parental rights: 1) Bill Painter, Director of Grandfather Home for Children, 2) Dr. Mark Everson, child psychologist, 3) Debra Trejo, mother of the children, and 4) Eleanor Ketchum, guardian ad litem. Respondent contends that such opinion testimony impermissibly invaded the province of the fact finder on an ultimate issue in the case.

According to Rule 704 of the Rules of Evidence, N.C. Gen. Stat. Chapter 8C (1986), testimony in the form of an opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. *State v. Smith,* 315 N.C. 76, 100, 337 S.E. 2d 833, 849 (1985). The test for the admissibility of an opinion of either a lay or expert witness under Rules 701 and 702 respectively is *helpfulness* to the trier of fact. *See* Commentary to Rule 704. *See also Mobley v. Hill,* 80 N.C. App. 79, 341 S.E. 2d 46 (1986) (lay opinion must be helpful to the jury).

We note initially that the assignment of error to the testimony of Dr. Everson is unsupported by any of Respondent's exceptions since the transcript reveals that this witness was not asked nor did he give an opinion on the ultimate issue of the advisability of terminating Respondent's parental rights. Furthermore, the trial court properly ruled that, based on education and experience, Dr. Everson was qualified as an expert in child psychology, especially with respect to sexually abused children, and Mr. Painter was qualified to testify as an expert in the areas of preparation of children for adoption and the effects of sexual abuse on children. In our opinion, the testimony of both experts to which Respondent excepts was within their respective areas of expertise and satisfied the helpfulness test for expert opinion under Rule 702.

[2]   On the other hand, it is doubtful whether the lay opinions of Debra Trejo concerning where the children should live and whether it would be best for them to be adopted, were helpful to the court in deciding those questions. She was not qualified, merely by virtue of being mother of the children, to offer an opinion regarding the termination of their father's rights. Nevertheless, the court admitted this testimony, not as directly bearing on the matters to which it related, but in order to better evaluate Ms. Trejo's own attitude, understanding of the situation, fitness as a parent, and prospects of regaining custody. The admission for that limited purpose was proper and did not prejudice Respondent.

[3]   Similarly, the helpfulness of the guardian ad litem's lay opinion that it was in the best interests of the children for parental rights to be terminated is questionable. However, in view of the abundance of other evidence supporting the judge's decision and

remarks of the judge indicating that he did not rely on this testimony, we conclude that admission of Ms. Ketchum's opinion, although error, was not prejudicial.

These assignments of error are overruled.

[4] 3. Respondent next contends that the Court erred by allowing the witness Bill Painter to testify regarding various statements made to him by Jamie Wheeler during therapy and relating to the sexual abuse by Jamie's father. Petitioner responds that the statements were properly admitted under the Rule 803(4) hearsay exception for statements made for purposes of medical diagnosis or treatment. We need not decide whether the 803(4) exception applies to the facts of this case. The judge did not allow relitigation of the abuse issue, and the evidence of Jamie's statements about the abuse was not admitted for the hearsay purpose of proving that the sexual abuse occurred. Rather, the statements were a part of lengthy testimony by Mr. Painter regarding Jamie's psychological and behavioral problems as they related to prospects for adoption, and the evidence was properly admitted as a basis for Mr. Painter's opinions concerning the continued effects of the sexual abuse on Jamie.

[5] 4. Nancy Dunham, the social worker for the Wheeler children, was asked on direct examination: "Do you have an opinion as to whether Jamie and Robbie would be good candidates for adoption once they have completed the program at Grandfather Home?" She responded: "Yes, according to Grandfather Home Officials, they see Jamie as developing into a good candidate for adoption. They see him working on his problems. We feel like Robbie is also a good candidate for adoption." Respondent contends this testimony was inadmissible because the opinion was based on hearsay about what another agency thought and not on personal knowledge.

This situation is similar to that in *In re Peirce*, 53 N.C. App. 373, 281 S.E. 2d 198 (1981), in which this Court upheld opinion testimony concerning "good parenting skills" by a social worker employed by Burke County Department of Social Services, despite the fact she had not been formally tendered as an expert. Like the trial judge in that case, Judge Washburn impliedly found the witness in this case to be an expert when he overruled Respondent's objection to Petitioner's question.

Ms. Dunham testified that she had been employed as a social worker by Petitioner for six years, and by Durham County Social Services for a year and a half prior to that. Her work for the latter five years involved permanency planning for children in foster care, and she had been assigned to the Wheeler children's case for the past year. In our view, the evidence supports Judge Washburn's implied finding that Ms. Dunham was qualified to render an expert opinion on the position of Jamie and Robbie as candidates for adoption. Moreover, as an expert, she was entitled, pursuant to Rule 703 of the Rules of Evidence to rely upon information received from Grandfather Home as a basis for her opinion. This assignment of error is overruled.

[6]  5. The guardian ad litem, Eleanor Ketchum, was allowed to testify on cross-examination by Petitioner: "My sense is that Mrs. Crawford is torn between loyalty to the boys and loyalty to her son," as a part of the basis for her opinion that it was in the best interests of the children to terminate parental rights. We have already concluded that the admission of Ms. Ketchum's opinion was error. We also agree with Respondent that the trial court erred in denying his motion to strike this statement. Ms. Ketchum was not qualified as an expert and her personal knowledge of Mrs. Crawford was based on minimal telephone contact. Therefore, this opinion about Mrs. Crawford's state of mind was not helpful.

However, "[i]n a trial by the Court without a jury, the erroneous admission of evidence will not ordinarily be held prejudicial, because it is presumed that the court did not consider the incompetent evidence." *Peirce* at 388, 281 S.E. 2d at 207. Further, the evidence of Mrs. Crawford's state of mind was only minimally relevant to the issues before the court, since a denial of the petition to terminate parental rights would in no way insure that the children would live with her. Therefore, as Respondent has failed to show that he was prejudiced by the admission of this testimony, this assignment of error is overruled.

6. Respondent's other assignments of error relating to evidentiary matters do not require discussion and are also overruled.

## C

Respondent's remaining twenty-five assignments of error are to specific findings of fact and conclusions of law as unsupported

by the evidence, and to the final disposition as unsupported by the findings and conclusions. Having carefully reviewed the record, the entire transcript, and each assignment of error, we conclude that all findings of fact necessary to support the order are supported by competent evidence, the findings are adequate to support the conclusions of law, and the court's final disposition of the case is supported by the findings and conclusions. Consequently, these assignments of error are without merit and are overruled.

### III

Concluding as we do that none of Respondent's assignments of error involve error sufficiently prejudicial to overturn the order of the trial court terminating Respondent's parental rights, we

Affirm.

Judges MARTIN and COZORT concur.