HAROLD G. HAMILTON v. DEBORAH E. HAMILTON (HOWARD)

No. 8810DC676

(Filed 16 May 1989)

1. **Appeal and Error § 6.6 — denial of motion to dismiss — presentation of evidence — waiver of appeal**

    Plaintiff waived his right to appeal from the denial of a motion to dismiss when he presented evidence after the motion was denied.

2. **Evidence § 47.1 — child custody — psychological summary — consideration by court in earlier order — basis of opinion**

    A written psychological summary prepared by a licensed psychologist was properly admitted in a child custody case to show the basis of an opinion offered by another psychologist

even though the summary had been presented to the court at the time of an earlier child custody decree.

**3. Evidence § 47.1— child custody—psychological summary— basis for opinion**

A written psychological summary prepared by a licensed psychologist was properly admitted in a child custody case under N.C.G.S. § 8C-1, Rule 703 to show the basis of an opinion offered by another psychologist since plaintiff made only a general objection and requested no *voir dire* to determine whether the summary was of a type reasonably relied upon by experts in the field of psychology, and since statements by one treating psychologist to another are presumptively reliable and considered to be of a type reasonably relied upon by experts in the field of psychology.

**4. Appeal and Error § 48.1— objection to testimony—same testimony admitted without objection**

Plaintiff lost the benefit of his objection to testimony when the same testimony was admitted without objection during cross-examination of the witness.

**5. Evidence § 47; Parent and Child § 6.3— child custody—visitation—opinion by psychologist**

A psychologist was properly allowed in a child custody proceeding to state her opinion that the mother could best meet the needs of the child and her recommendations concerning visitation by the father since the testimony was within the area of expertise of the witness and satisfied the helpfulness test for expert opinions under Rule 702. N.C.G.S. § 8C-1, Rules 701, 702, 704.

**6. Divorce and Alimony § 25.9— modification of child custody— changed circumstances—sufficient evidence**

The trial court's conclusion that there had been a substantial change of circumstances affecting the welfare of a child so as to support a change of custody from the father to the mother was supported by the court's findings that, since the original custody order, the father has interfered with the mother's efforts to maintain a mother-child relationship; the father has insisted that the mother not see the child at school or at day care; the father has terminated his second marriage; the father was violent toward his second wife and the child

**HAMILTON v. HAMILTON**

[93 N.C. App. 639 (1989)]

and was erratic in his rules and behavior toward the child; the mother has remarried and her current husband has developed a good relationship with the child; the father demonstrated a violent personality outburst toward school officials, causing the child to become the center of controversy within the school setting; a kindergarten teacher noticed that the child was troubled and exhibited anger, aggression, fear and anxiety; when the father was told that the child wanted to live with the mother, he grabbed the child, called him a liar, and threatened not to let him visit his mother if he continued to say such things; the father accused the child of lying to social workers and threatened to cut off visits with the mother; and the mother and her new husband own a new three-bedroom home, and the child has a room of his own at this residence.

Judge PHILLIPS concurring in the result.

APPEAL by plaintiff from *Morelock (Fred M.), Judge*. Order entered 5 February 1988 in District Court, WAKE County. Heard in the Court of Appeals 24 January 1989.

*Yeargan, Thompson & Mitchiner, by W. Hugh Thompson, for plaintiff-appellant.*

*Purser, Cheshire, Parker, Hughes & Manning, by John H. Parker and Patricia A. Moylan, for defendant-appellee.*

GREENE, Judge.

In this civil action plaintiff, Harold G. Hamilton, appeals from an order of the trial court awarding defendant, Deborah E. Hamilton, the sole custody of the parties' minor child.

The issue of custody came before the trial court on 10 November 1987 pursuant to defendant's motion in the cause alleging a "substantial and material change in circumstances that materially affects the well being of the child." The history of this custody dispute reveals that the first of several custody orders was entered on 20 January 1984 and granted primary custody of the minor child to the plaintiff, with "reasonable and liberal visitation privileges" to the defendant. After motions in the cause, the trial court again on 11 June 1985 and 28 February 1986 continued primary custody with the plaintiff.

The plaintiff's assignments of error present for our review the following issues: I) whether the trial court erred in denying plaintiff's motion to dismiss made at the end of the defendant's evidence; II) whether the findings are supported by competent evidence; and III) whether the findings of fact support the conclusion of the trial court that there existed a substantial change of circumstances.

I

Plaintiff's motion at the end of the defendant's evidence, to dismiss the defendant's motion for change in custody, is treated as a Rule 41(b) motion for involuntary dismissal. N.C.G.S. Sec. 1A-1, Rule 41(b) (1983) (dismissal granted if upon the facts and the law plaintiff has shown no right to relief). The question presented in a Rule 41(b) motion is "whether the . . . evidence, taken as true, would support findings of fact upon which the trier of fact could properly base a judgment for the" party with the burden of proof. *Woodlief v. Johnson*, 75 N.C. App. 49, 53, 330 S.E. 2d 265, 268 (1985). The defendant, here the party moving for a change in custody, has the burden of showing a substantial change of circumstances. *Searl v. Searl*, 34 N.C. App. 583, 587, 239 S.E. 2d 305, 308 (1977).

[1] As the plaintiff presented evidence after his motion to dismiss was denied, he has waived any right to appeal from the denial of that motion. 9 C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 2371, p. 221 (1971) (by presenting evidence, a party moving to dismiss waives his right to appeal from the denial of the motion).

II

The trial court entered some sixty-eight different findings of fact and the plaintiff argues that fifty-three of them are "not supported by properly admissible evidence."

A trial court's "findings of fact modifying a child custody order are conclusive on appeal if supported by competent evidence, . . . even though there is evidence to the contrary" (citation omitted). *Vuncannon v. Vuncannon*, 82 N.C. App. 255, 259, 346 S.E. 2d 274, 276 (1986). Competent evidence in a custody modification case includes only evidence of circumstances (1) existing at the time of the prior custody decree which "[was] not disclosed to the court" and (2) other pertinent circumstances occurring since the entry of

## HAMILTON v. HAMILTON

[93 N.C. App. 639 (1989)]

the prior custody decree. *See Wehlau v. Witek*, 75 N.C. App. 596, 598, 331 S.E. 2d 223, 225 (1985).

### A

[2] Plaintiff first contends the trial court considered incompetent evidence when it reconsidered evidence which had earlier been presented to the court when the court entered its custody orders in January 1984, June 1985, and February 1986. However, in only one instance did the plaintiff object, except and assign error to any of defendant's evidence on the ground that "it had been a subject of a prior court custody determination." Specifically, the plaintiff objected to the introduction of a written psychological summary by Dr. Rosalind L. Heiko (Dr. Heiko), a licensed psychologist. Dr. Heiko's written summary was used as the basis of an opinion offered by Dr. Paula Clarke, a licensed psychologist who did testify at the trial. Dr. Heiko did not testify. Dr. Heiko's psychological summary related to an evaluation performed by Dr. Heiko on the minor child from 5 September 1985 through 4 November 1985, at a time when earlier custody litigation was pending. It also appears from the record that a portion of Dr. Heiko's psychological summary was referred to in an earlier verified motion for change of custody which was filed on 8 December 1985. Therefore, it appears from the record that Dr. Heiko's report existed at the time of a prior custody decree and was disclosed to the court. Nonetheless, we find no error as the trial court did not admit Dr. Heiko's report in as substantive evidence but only for the limited purpose of representing the basis of the opinion of Dr. Paula Clarke.

### B

[3] The plaintiff next contends the trial court erred in allowing Dr. Heiko's report into evidence as representing the basis of the opinion of Dr. Clarke. Rule 703 of our Rules of Evidence permits an expert to base his opinion on "facts or data" "made known to him at or before the hearing" and the "facts or data need not be admissible in evidence" "[i]f of a type reasonably relied upon by experts in the particular field." N.C.G.S. Sec. 8C-1, Rule 703 (1988). As Dr. Heiko did not testify, the introduction of his report into evidence, even as non-substantive evidence, is permissible only if Dr. Heiko's report was "of a type reasonably relied upon by experts" in the field of psychology. When a party objects to the testimony of an expert on the ground that he is using "facts or

data" not "of a type reasonably relied upon by experts in the particular field," the trial court must make a preliminary determination, pursuant to N.C.G.S. Sec. 8C-1, Rule 104(a) as to "whether the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* Sec. 703[03], p. 703-16 (1988); N.C.G.S. Sec. 8C-1, Rule 104(a) (1988) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court"). This determination does not necessarily require a hearing outside the presence of the jury as "[m]uch evidence on preliminary questions . . . may be heard by the jury with no adverse effect." N.C.G.S. Sec. 8C-1, Rule 104, comment. Whether or not to hold a hearing outside the presence of the jury on this matter is left to the discretion of the judge "as the interests of justice require." *Id.* However, "[h]earings on the admissibility of confessions or other motions to suppress evidence in criminal trials in Superior Court" *must be held* outside the presence of the jury. N.C.G.S. Sec. 8C-1, Rule 104(c) (1988). "The primary consideration of the judge in deciding whether to remove the jury is the potential for prejudice inherent in the evidence which will be produced by parties on the preliminary question." 1 J. Weinstein & M. Berger, Sec. 104[10], p. 104-74 (1988).

The record indicates the plaintiff only made a general objection to the use and introduction of Dr. Heiko's written summary and did not assert any specific ground for the objection. *See* N.C.G.S. Sec. 8C-1, Rule 103(a)(1) (1988) (objection must clearly present the alleged error). Furthermore, plaintiff requested no *voir dire* and offered no evidence or argument on the question of whether Dr. Heiko's report was "of a type reasonably relied upon by experts" in the field of psychology. N.C.G.S. Sec. 8C-1, Rule 705 (1988) (expert can be required before stating his opinion to disclose "underlying facts or data on direct examination or *voir dire*"). Therefore, the plaintiff has waived any error in the use of Dr. Heiko's report. *State v. Catoe*, 78 N.C. App. 167, 168, 336 S.E. 2d 691, 692 (1985), *disc. rev. denied*, 316 N.C. 380, 344 S.E. 2d 1 (1986) ("[e]rror may not be argued on appeal where the underlying objection fails to present the nature of the alleged error to the trial court"). In any event, statements by one treating psychologist to another are presumptively reliable and considered to be of a type reasonably relied upon by experts in the field of psychology. *See Donavant v. Hudspeth*, 318 N.C. 1, 26, 347 S.E. 2d 797, 812 (1986) ("statements by one treating physician to another are inherently reliable"). Ac-

HAMILTON v. HAMILTON

[93 N.C. App. 639 (1989)]

cordingly, we find the trial court committed no error in admitting this report for the limited purpose of showing the basis of Dr. Clarke's opinion.

C

[4] The plaintiff next contends the trial court erred in admitting the following testimony of Dr. Clarke:

Q. Who has been punishing him, can you answer that part of it?

A. I don't have that information directly from Ryan. You know, what I am told is, and if this is, you know, this is only my opinion at this point because I don't have direct information from Ryan on this score. It appears—

. . .

A. It appears that he's fearful of his father punishing him.

The plaintiff argues this testimony was inadmissible hearsay. However, on cross-examination the same witness, without objection, testified that "the child was fearful of his father punishing him." "Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost." *State v. Whitley*, 311 N.C. 656, 661, 319 S.E. 2d 584, 588 (1984). Therefore, the plaintiff has waived his right to raise on appeal his objection to the evidence.

D

[5] The plaintiff next contends the trial court erred in admitting over objection the following testimony of Dr. Clarke:

A. In my opinion, Debbie is better able to meet those needs because she does have the capacity to empathize and see things from Ryan's point of view. She also has the ability to recognize when she is having trouble doing that and to ask for help. In my opinion, Mr. Hamilton does not have that ability.

. . .

Q. Do you have any recommendations regarding visitation or any other recommendations?

. . .

A. I recommend that Ryan continue to see his father, assuming primary custody were with the mother, while being supervised

initially by the Department of Social Services. Later to be supervised by other adults while treatment is taking place, while all parties continue to be in treatment. The treatment would be—what I'm suggesting is that treatment needs to be court ordered for Ryan, because Ryan, to my knowledge, has not received consistent treatment. He is bounced between psychologist and has not been able to be sustained in any kind of treatment relationship; so that needs to be courtordered and be provided on an ongoing basis with both parents' involvement as requested by the therapists.

Rule 704 of the Rules of Evidence provides that "[t]estimony in the form of an opinion is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." N.C.G.S. Sec. 8C-1, Rule 704 (1988). "The test for the admissibility of an opinion of either a lay or expert witness under Rules 701 and 702 respectively is *helpfulness* to the trier of fact." *In re Wheeler*, 87 N.C. App. 189, 196, 360 S.E. 2d 458, 462 (1987). In our opinion, the testimony of Dr. Clarke was within her respective area of expertise and satisfied the helpfulness test for expert opinions under Rule 702. The witness was unquestionably in a better position than the trial court to have an opinion on the subject about which she testified and her testimony undoubtedly aided the court in making its determination. *See In re Byrd*, 72 N.C. App. 277, 281, 324 S.E. 2d 273, 277 (1985) (expert "in the field of juvenile protective services and in permanency placing of children" permitted to give opinion that "parental rights should be terminated in order that permanency placement for [child] could be completed").

E

Plaintiff makes additional arguments that the trial court erred in considering other evidence; however, as no authority was cited by the plaintiff in support of his arguments, these assignments of error are deemed abandoned. App. R. 28(b)(5); *Byrne v. Bordeaux*, 85 N.C. App. 262, 265, 354 S.E. 2d 277, 279 (1987) ("the body of the argument shall contain citations of authority upon which the appellant relies"). In any event, as this case was tried without a jury, any "erroneous admission of evidence will not ordinarily be held prejudicial, because it is presumed that the court did not consider the incompetent evidence." *In re Peirce*, 53 N.C. App. 373, 388, 281 S.E. 2d 198, 207 (1981).

F

Finally, having reviewed the evidence and the findings of fact, we are of the opinion that the findings are supported by competent evidence.

III

[6]   The trial court, after the 10 November 1987 hearing and on 5 February 1988, signed an order and concluded in part:

There has been a substantial change of circumstances since the order of this Court in February, 1987 regarding the condition and welfare of Ryan and his condition and welfare shall appreciably improve by the changing of his custody to the defendant.

As the custody of the minor child had previously been judicially established, the previous orders of the court cannot be changed except upon a "substantial change in circumstances that *affects the welfare of the child.*" *Hinton v. Hinton*, 87 N.C. App. 676, 677, 362 S.E. 2d 287 (1987) (emphasis in original); *see* N.C.G.S. Sec. 50-13.7(a) (1987) ("custody . . . may be modified . . . upon . . . a showing of changed circumstances . . . ."); *Rothman v. Rothman*, 6 N.C. App. 401, 406, 170 S.E. 2d 140, 144 (1969) ("there must generally be a substantial change of circumstances before an order of custody is changed").

The following findings, among others, support the trial court's conclusion that there had been "a substantial change of circumstances since the order" of February 1987:

1. Since February 1986, "the plaintiff has consistently attempted to thwart efforts by the defendant to maintain and develop a mother-child relationship with Ryan . . . ."

2. Since February 1986, the plaintiff "demanded of school officials that the defendant's presence in Ryan's classroom and the defendant's participation at Ryan's school as a parent volunteer be terminated."

3. Since February 1986, the plaintiff "has refused to share with the defendant information concerning Ryan's school work."

4. Since February 1986, if the "plaintiff did not get his way, he, on many occasions, threatened to stop or disallow visitation by the defendant with Ryan."

5. Since February 1986, the plaintiff "denied the defendant the opportunity to visit with the child at Ryan's day care facilities."

6. The plaintiff in July of 1987 terminated "his marital relationship with Nancy Hamilton."

7. "Nancy Hamilton testified that the conditions in their home prior to their separation were such that the plaintiff exercised violence toward herself and Ryan and that he was erratic in his rules and behavior towards Ryan."

8. "The defendant's home life and family situation have changed and improved since February 1986. The defendant has remarried and her current husband has developed a good relationship with Ryan."

9. Since February 1986, "the plaintiff has demonstrated violent personality outburst to school officials causing Ryan to become the center of controversy within the school setting and the plaintiff has threatened to sue school officials if they were to continue to allow the defendant to have access to Ryan at school."

10. During the 1986-87 kindergarten school year "Dr. Paula Clarke noticed Ryan to be a very troubled child, feeling enormous anger and aggression and stated that Ryan was fearful and anxious."

11. "In March 1987, the plaintiff was told that Ryan wanted to live with the defendant and the plaintiff went home and grabbed Ryan and called him a liar and threatened to not let him visit his mother if he continued to say things like that."

12. "In the Spring of 1986, the plaintiff accused Ryan of lying to the Department of Social Services workers and told the child that if he didn't stop 'lying' to Social Services he wouldn't get to visit with his mother."

13. "The defendant and her [new] husband own and occupy a new three-bedroom home with a yard area in the front and back. Ryan has a room of his own at this residence."

Accordingly, the order of the trial court awarding defendant the sole custody of the parties' minor child is

Affirmed.

Judge COZORT concurs.

Judge PHILLIPS concurs in the result.

Judge PHILLIPS concurring in the result.

I agree that the appeal has no merit and the order must be affirmed. But since the court's findings clearly support the order only one question material to the appeal is raised, in my opinion; a question not raised by plaintiff but by the record—Are the court's material findings of fact supported by competent evidence? The questions that plaintiff stated in his brief—whether the court "committed reversible error" in denying his motion to dismiss defendant's motion at different stages of the hearing, and in receiving certain items of evidence—are irrelevant to an appeal from a judge's findings, conclusions, and order, and discussing them tends to obfuscate rather than clarify the problem involved and its proper solution. Certainly this modification of a child custody order is not subject to Rule 41, N.C. Rules of Civil Procedure, which has to do with the "Dismissal of Actions."